**Laurence KALLEN and Lola M. Hale, Plaintiffs,**

**v.**

**NEXUS CORPORATION, an Illinois corporation, et al., Defendants.**

**No. 71 C 569.**

United States District Court, N. D. Illinois, E. D.

March 8, 1972.

**612**

Fisher & Fisher, Barry M. Fisher, Kenneth H. Fisher, Chicago, Ill., for plaintiffs.

Chester W. Nosal, John W. Stack, Winston & Strawn, Michael I. Miller, Chicago, Ill., for defendants.

## ORDER and MEMORANDUM OPINION

AUSTIN, District Judge.

This is a federal antitrust action brought on behalf of a class of persons who have taken and will take a bar review course offered by defendants. Before the court is plaintiffs' "Motion for an Order Determining that Future Discovery Taken in this Action be Taken by other than Stenographic Means."

As amended on March 30, 1970, and effective July 1, 1970, Rule 30 of the Federal Rules of Civil Procedure provides in part:

Rule 30(b) (4). The court may upon motion order that the testimony at a deposition be recorded by other than stenographic means, in which event the order shall designate the manner of recording, preserving, and filing the deposition, and may include other provisions to assure that the recorded testimony will be accurate and trustworthy. If the order is made, a party may nevertheless arrange to have a stenographic transcription made at his own expense.

Accompanying their recommendation of Rule 30(b) (4) to the Supreme Court, the Advisory Committee on Rules prepared the following notes:

Subdivision (b) (4). In order to facilitate less expensive procedures, provision is made for the recording of testimony by other than stenographic means—e. g., by mechanical, electronic, or photographic means. Because these methods give rise to problems of accuracy and trustworthiness, the party taking the deposition is required to apply for a court order. The order is to specify how the testimony is to be recorded, preserved, and filed, and it may contain whatever additional safeguards the court deems necessary.[1]

Little attention has been paid to Rule 30(b) (4) in published opinions. This court has found only one case which makes reference to the potential of Rule 30(b) (4) and it does not deal with the question of depositions. Carson v. Burlington Northern Inc., 52 F.R.D. 492 (D.C.Neb.1971). In addition there has been a clear absence of scholarly atten-

---

1. An earlier draft of the 1970 amendments would not have required a court order and would simply have allowed the party to designate in the notice of taking the means by which the deposition would be recorded, subject to the power in the court to make orders to assure that the recorded testi-

mony would be accurate and trustworthy. Preliminary Draft of Proposed Amendments to Rules of Civil Procedure relating to Deposition and Discovery, Nov. 1967, p. 40, reprinted 43 F.R.D. 211, 239–240.

tion to this Rule which can make so potentially significant a contribution to the efficient and economic administration of justice in civil cases.

In the case of Galley v. Pennsylvania R. Co., 30 F.R.D. 556 (D.C.N.Y.1962), a party moved to have depositions recorded by audio tape recorder rather than by a stenographer. The court held that this was not allowed under the specific language of Rule 30(c) in 1962. In 1968, in U. S. Steel Corp. v. U. S., 43 F. R.D. 447 (D.C.N.Y.1968), the district court refused to permit the preparation of a video tape recording of a deposition in addition to the stenographic recording. On July 1, 1970, Rule 30(b) (4) became effective.

In *Carson, supra,* the only published opinion in which a court considers the new Rule 30(b) (4), the court granted defendant's motion to take a deposition by both video-tape *and* stenographic means for the purpose of demonstrating the manner in which plaintiff operated a machine at the time of and immediately prior to an industrial accident. In no case which has come to our attention has a party sought to take a deposition by audio tape recorder in order to reduce the costs of taking the deposition by stenographic means.

Rule 30(b) (4) has opened a new area for exploration. In this area the potential for making a significant contribution to the efficient and economic administration of justice is extensive. However, just as the potential is great, so too this is an area as yet uncharted, and it is an area which is not without pitfalls. Of particular concern to the court which seeks to chart a course in this area, is the preservation of that level of accuracy and integrity which we have come to associate with an independent stenographic record, while harnessing the potential cost saving factors which modern technology will increasingly provide. This effort to balance values of such importance to the administration of justice must be undertaken with a proper caution, distilled of common sense and judicial experience, and with a tenacity and courage which the great potential created by Rule 30(b) (4) for reducing the cost of civil litigation should stimulate, to the end that the federal court will become a forum more equally open to the rich and the poor. The specific focus of the court's task is the creation of appropriate safeguards to insure the accuracy, integrity and utility of the audio recordings made of a deposition.

The adoption of Rule 30(b) (4), effective July 1, 1970, was a necessary step in the modernization of discovery and trial practice. But the recognition of the great potential advantages to the administration of civil litigation does not make of them a practical reality. Unfortunately, neither the Rule itself nor the Advisory Committee Notes provides much assistance to the court in specifying what non-stenographic methods should be used or in providing safeguards which will protect the accuracy, utility and integrity of the record.

In this early stage of experimentation, several principles suggest themselves which may help in providing those guidelines which will safeguard the non-stenographic record:

■ 1. *Allocation of Responsibility* —The traditional allocation of responsibility in a deposition with a stenographic record has weighed most heavily on the calling party. Typically the calling party employs an independent court reporter to record the deposition testimony. The calling party is totally responsible for the appearance, competence and, by implication, the equipment of the court reporter. Until strong evidence is available to justify a change in this allocation of the major burden of responsibility to the calling party, the provision for a non-stenographic record should preserve these relative burdens.

■ 2. *Operator Independence*—The independence and integrity of the court reporter has been a traditional protec-

tion of the integrity of the record produced. To expect attorneys in hotly contested litigation to undertake, in addition to the active pursuit of their clients' interests, the technical and mechanical responsibilities of operating recording equipment of any complexity, would be undesirable and diminish the accuracy, if not the integrity, of the recording. An independent operator of recording equipment should provide further assurance of the integrity of the recording and relieve the attorneys completely, to represent their clients.

■■ 3. *Recording Quality*—By passing through the ear of the court reporter, the parties have a check on the clarity and accuracy of the stenographic record. A non-stenographic recording should provide a quality of recording which is at least as high as that provided by a court reporter. The quality of equipment in an audio recording should in these initial experiments under Rule 30(b) (4) be very high. After some experience with the highest quality equipment, some adjustments can be made which will allow for less expensive equipment upon a showing that such equipment will not reduce the quality of the recording below that produced by stenographic means and that it is justified by substantially reduced costs. Reduced costs will not alone justify a significant reduction in the quality of the recording produced.

Applying these principles we turn to the specific guidelines to be applied in this matter.

■ The calling party should take the full responsibility for producing the aural tape record. The calling party should provide the necessary equipment, including the blank tapes and log or index forms, at its own expense. The recording equipment should be of adequate quality for voice reproduction. Until actual experience indicates that it is unnecessary, the recordings should be made in stereo to assure that voices which are simultaneously talking or shouting will be distinguishable. The court does not indicate that any particular assemblage of equipment is not acceptable, but the parties should keep in mind that during the early experience under Rule 30(b) (4), the courts will expect the parties to provide an ample margin of reproductive quality in order to insure the accuracy of the record. At a later time perhaps, experience will show that equipment of a lower quality will provide a sufficiently accurate record for purposes of civil litigation.

■ The equipment should include individual lavalier microphones for each participant in the deposition and a microphone mixer which compensates for the different speaking levels of the participants.

■ The equipment must be capable of producing a number of "duplicate original" recordings sufficient to provide one "duplicate original" for each party to the deposition and one "duplicate original" to be filed with the court. The term "duplicate original" means that each recording be made from the same signal. To create "duplicate originals", a single signal must be transmitted through a single set of microphones leading into all of the recording machines simultaneously. Therefore, the tape transports on all machines must be so arranged that they can be operated simultaneously.

■ Further, an additional recording machine, operating in tandem with the others should be provided with a separate record and playback reader which can be operated simultaneously to "monitor off the tape", in order to assure that a recording is being made, and to allow for repetition of the immediately preceding record for the convenience of the attorneys in posing questions.

■ The calling party shall provide an independent operator of the equipment, who shall also make a detailed log/index of the proceedings including the subject matter being dis-

cussed, the exhibits, the attorneys and the witness. A detailed log/index would provide a method of referring back to previous questions during the course of the deposition and provide for ease of review of the aural record by the parties for purposes of determining those portions which are to be transcribed. For this purpose the recorders should be equipped with synchronized digital counters to insure an accurate index for each recording. The operator shall certify the correctness and completeness of the recordings in the manner that a stenographic reporter certifies the typed record of a deposition. See *Carson, supra.*

In order to achieve the economy of labor which is inherent in the stenographic system, a single transcription should be made of those portions of the deposition record which each party considers most useful. This single transcription should be made available to all parties at a cost which is equitably allocated between them. If either party makes a written abstract of the record which does not constitute a privileged work-product, it should also be made available to the opposing party and the costs should be equitably allocated between them.

The traditional allocation of costs in a deposition has placed the larger burden on the calling party. Until such time as there is evidence that a changed distribution of costs will not promote harassing depositions and depositions of unnecessary length, the traditional allocation of deposition costs should provide a guideline to the parties in allocating costs when a non-stenographic record is prepared.

Plaintiffs' motion to take further discovery by other than stenographic means is granted, subject to the limitations set forth above. The parties may prepare a draft order embodying the procedure for taking depositions by audio tape recording.