Walter JAROSIEWICZ, Plaintiff,

v.

James CONLISK, Superintendent of Police of the City of Chicago, et al., Defendants.

No. 73 C 1010.

United States District Court,
N. D. Illinois, E. D.

June 29, 1973.

Alison Edwards of Edwards, Haney, Singer & Stein, Chicago, Ill., for plaintiff.

George M. Keane, Jr., Asst. Corp. Council for the City of Chicago, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the defendants Conlisk and Mueller's motion for summary judgment.

This is a civil rights action to redress an alleged deprivation of the plaintiff's civil rights guaranteed by the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 and 1986. Jurisdiction of this Court is based on 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1988.

The plaintiff, Walter Jarosiewicz, is alleged to be a "person within the jurisdiction of the United States and a resident of Chicago, Illinois". The defendants are: Thomas Peebles, a Chicago police officer; James B. Conlisk, Jr., Superintendent of the Chicago Police Department; Joseph Mueller, Commander of the 14th District of the Chicago Police Department; John Does, Richard Roe and other Chicago police officers not presently known to the plaintiff.

Plaintiff in his complaint alleges the following facts, *inter alia*:

1.  On or about the 21st day of January 1973 at approximately 3:00 p. m., the plaintiff was at his home with his family. Pursuant to a call for assistance regarding a family dispute made by the plaintiff's mother, officers Thomas Peebles, John Doe, Richard Roe and others arrived at the plaintiff's home.

2.  The defendants Peebles, Doe, Roe and others entered the front door of the plaintiff's apartment and then did maliciously, wrongfully, illegally, knowingly, without a warrant or permission of the plaintiff search the apartment and went to the rear of the apartment and down the basement stairs. The defendant Peebles drew his service revolver without cause and without provocation before entering the basement of the apartment building.

3.  Upon finding the plaintiff in the basement crouched under the rear stairs, the defendant Peebles did maliciously, wrongfully, illegally and without warning aim his service revolver from a distance of approximately three feet from the plaintiff and did discharge his service revolver into the neck and chest of the plaintiff. The defendants Doe, Roe and others observed the defendant Peebles to have his service revolver drawn and watched the defendant Peebles fire said two shots into the neck and chest of the plaintiff. The defendants Doe, Roe and others neglected and refused to restrain the defendant Peebles from firing said two shots, although they had the power to prevent the commission of said acts of the defendant Peebles.

4.  The defendants Peebles, Doe, Roe and others refused to allow members of the plaintiff's family to descend the stairs of their home to the basement where said incident occurred so that the family could render aid to the plaintiff. Those defendants seized and handcuffed the plaintiff and dragged him up the basement stairs of the plaintiff's apartment, whereupon the plaintiff lost consciousness. The same defendants then carried the plaintiff out to the street and threw him from a distance of several feet into a paddy wagon on his back.

5.  The defendants Peebles and Doe, individually and in conspiracy with one another, did maliciously, wrongfully, illegally, and without lawful cause charge the plaintiff with two counts of aggravated battery.

6. These defendants were acting within the scope of and in the course of their employment as police officers of the city of Chicago and were acting under the command of the defendant James B. Conlisk, Jr., and under the supervision of the defendant Joseph Mueller. Defendant Mueller, as District Commander, had the responsibility for supervision and monitoring the professional conduct of the police officers under his supervision and was negligent in that responsibility.

The plaintiff seeks damages in the sum of $250,000, punitive damages in the sum of $1,000,000 plus the cost of maintaining this action.

The defendants Conlisk and Mueller, in support of the motion for summary judgment in their favor contend that the doctrine of *respondeat superior* does not apply in civil rights cases and thus that the plaintiff has failed to state a cause of action against them. Joseph Mueller has also submitted to this Court an affidavit which states in relevant part:

" . . . I have never known the plaintiff, Walter Jarosiewicz, and I have no personal knowledge of any of the occurrences which were alleged to have taken place involving the plaintiff, Walter Jarosiewicz, and the other defendants, or other persons who are employed by the City of Chicago, Department of Police, on various dates referred to in the plaintiff's complaint and at all other times relative to the plaintiff's Complaint.

Furthermore, I have no personal knowledge of either the reason for plaintiff's encounter with police officers, his arrest, detention or the disposition in court of any charges placed against him. I did not initiate the investigation or the arrest, nor did I instruct or order anyone else to do so.

At all times and places mentioned in plaintiff's Complaint, none of the other defendants were acting under my direct supervision or pursuant to my direct orders or directives. Further, at all times mentioned in plaintiff's complaint, I was on furlough and was not acting in my capacity as Commander, 14th District.

Those defendants alleged to be employed by the city of Chicago Department of Police like myself, were engaged in governmental functions on behalf of the city of Chicago; they are not employees of the District Commander. At no time stated in the Complaint of this plaintiff did I ratify, condone, or sanction any of the acts of any of the other defendants . . . ."

The plaintiff in response to defendants Conlisk and Mueller's motion for summary judgment has stated:

1. The plaintiff voluntarily dismisses the defendant James Conlisk as a party to this action.

2. The plaintiff does not seek to hold defendant Joseph Mueller liable on the basis of the theory of *respondeat superior*.

3. Defendant Mueller may be held liable for his individual acts of negligent or wilful misconduct when the plaintiff's injuries were a foreseeable result of said defendant's misconduct and were proximately caused by said misconduct.

4. There may be sufficient foundation for submitting to a jury the issue of whether the defendant Mueller observed the standard of care required of him in the performance of his official duties, in connection with the cause herein.

It is the opinion of this Court that the plaintiff has failed to state a cause of action against defendants James B. Conlisk, Jr. and Joseph Mueller. Thus summary judgment should be

granted in their favor. Since the plaintiff has voluntarily dismissed defendant Conlisk, there is no need for this Court to elaborate on his dismissal. Yet it is important to note that the following ruling and the reasoning as to dismissal of defendant Mueller would be equally applicable to the dismissal of defendant Conlisk.

## I. THE PLAINTIFF HAS FAILED TO STATE A CAUSE OF ACTION AS TO THE DEFENDANT MUELLER

The plaintiff, in his complaint, has not alleged that the defendant Mueller directed or personally participated in any of the acts following his arrest and detention which the plaintiff claims to have violated his civil rights. The defendant has signed an affidavit stating that he did not charge the plaintiff with aggravated battery, nor did he direct, participate or have personal knowledge of what is alleged to have taken place on or about January 21, 1973 at the plaintiff's residence.

■ The doctrine of *respondeat superior* does not apply in civil rights cases under 42 U.S.C. § 1983. Barrows v. Faulkner et al., 327 F.Supp. 1190, 1191 (N.D.Okl.1971); Sanberg v. Daley, 306 F.Supp. 277 (N.D.Ill.1969). Further, Courts have uniformly held that police supervisory personnel are not liable for damages for one injured by police misconduct absent direct personal participa-tion. Barrows v. Faulkner et al., *supra*; Sanberg v. Daley, *supra*; Mack v. Lewis, 298 F.Supp. 1351 (S.D.Ga.1969); Patrum v. Martin, 292 F.Supp. 370 (W.D. Ky.1968); Runnels v. Parker, 263 F. Supp. 271 (C.D.Cal.1967); Pritchard v. Downie, 216 F.Supp. 621 (E.D.Ark. 1963); Jordan v. Kelly, 223 F.Supp. 731 (W.D.Mo.1963).

Neither the instant complaint nor the amended complaint which the plaintiff has today been given leave to file allege a direct personal participation by defendant Mueller in the violation of the plaintiff's civil rights.[1] Moreover, the defendant Mueller in his affidavit in support of his motion for summary judgment which is uncontested by the plaintiff clearly states that he did not direct, participate in, or have personal knowledge of the incident in question. See Ashenhurst v. Carey, 351 F.Supp. 708 (N.D.Ill.1972).

Accordingly, it is hereby ordered that the defendants Conlisk and Mueller's motion for summary judgment in their favor is granted and they are dismissed from the instant action.

## On Motion to Have Depositions Recorded Electronically

This cause comes on the plaintiff's motion to have depositions recorded electronically by a tape recorder or other means rather than by stenographic means.

This is a civil rights action to redress an alleged deprivation of the plaintiff's

---

[1]. In paragraph 20 of the amended complaint, plaintiff alleges:
"That the defendant MUELLER, as Commander of the Fourteenth District of the Police Department of the City of Chicago, failed to transfer, discipline or recommend for suspension OFFICER THOMAS PEEBLES, prior to January 21, 1973, although defendant MUELLER knew or should have known that the physical and mental health of defendant PEEBLES was impaired to such a degree that it was likely to interfere with his performance as a policeman and prevent him from exercising the degree of care and sound judgment required of a police officer of the City of Chicago. That but for said negligence of defendant Mueller, the injuries to the plaintiff and the violation of rights guaranteed to him by the Constitution and laws of the United States could have been prevented.
It is clear to this Court that this allegation fails to state a cause of action against the defendant Mueller who was not acting as District Commander of the 14th District at the time of the alleged civil rights violation and was in fact on furlough at that time.

civil rights guaranteed by the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 and 1986. Jurisdiction of this Court is based on 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1988. The plaintiff seeks damages in the sum of $250,000, punitive damages in the sum of $1,000,000, plus the cost of maintaining this action.

The plaintiff in support of the instant motion contends that (1) the plaintiff is without sufficient funds or means to bear the cost of stenographic transcripts in pursuit of meaningful, effective and adequate preparation of his case; and (2) pursuant to Rule 30(b)(4) of the Federal Rules of Civil Procedure and Rule 18 of the General Rules for the Northern District of Illinois, this Court may order, in such a case, that the deposition be recorded by tape recorder or other means. The plaintiff has failed to provide any statement of the procedure to be followed or a detailed statement of how the depositions are to be taken.

As amended on March 30, 1970, and effective July 1, 1970, Rule 30(b)(4) of the Federal Rules of Civil Procedure provides:

> "The court may upon motion order that the testimony at a deposition be recorded by other than stenographic means, in which event the order shall designate the manner of recording, preserving and filing the deposition, and may include other provisions to assure that the recorded testimony will be accurate and trustworthy. If the order is made, a party may nevertheless arrange to have a stenographic transcription made at his own expense."

The Advisory Committee in their Notes on Rule 30(b)(4) stated:

> "In order to facilitate less expensive procedures, provision is made for the recording of testimony by mechanical, electronic, or photographic means. Because these methods give rise to problems of accuracy and trustworthi-

ness, the party taking the deposition is required to apply for a court order. The order is to specify how the testimony is to be recorded, preserved, and filed, and it may contain whatever additional safeguards the court deems necessary."

Neither the Rule itself nor the notes of the Advisory Committee make an effort to specify how the testimony is to be recorded, preserved and filed and what safeguards should be utilized. Presumably, it is contemplated that such matters would be worked out in the judicial supervision of concrete cases.

Federal courts when similarly faced with the question of whether to allow an alternative means of taking depositions and discovery have made the policy decision that experimentation with this newly authorized procedure should be encouraged rather than blocked. Marlboro Products Corp. v. North American Philips Corporation, 55 F.R.D. 487 (S. D.N.Y.1972); Kallen v. Nexus Corp., 54 F.R.D. 610 (N.D.Ill.1972); Carson v. Burlington Northern Inc., 52 F.R.D. 492 (D.Neb.1971).

This Court is cognizant that the potential of Rule 30(b)(4) for making a significant contribution to the efficient and economic administration of justice is considerable. Yet this is an area to date uncharted and filled with many potential pitfalls. While this Court is not hesitant to follow the lead of other federal courts in allowing this type of "experimentation", it will not order such alternative methods of recording depositions until definite methods, procedures and safeguards are delineated by the moving party. This Court will enlist counsel for plaintiff in his role as an officer of the Court to implement this spirit of "experimentation". Counsel for plaintiff will be expected to attempt to fashion a realistic and practical method and procedure for recording the desired depositions which would be reasonably acceptable to defendants.

Until an appropriate method and procedure can be agreed upon by the parties with the assistance of this Court, no order for the alternative means of recording the depositions will be granted. Counsel are expected to produce and submit jointly so much of an agreed order as they are able to achieve.

To guide these efforts of counsel, the Court will outline its views on the basic objectives to be embodied in any such "experimentation". The specific concern of this Court is over the creation of appropriate safeguards to insure the accuracy, integrity and utility of the audio-recordings made of a deposition. Further, it is the opinion of the Court that any such experimentation must comply with the following principles:

1. The traditional allocation of responsibility in a deposition on the calling party should be maintained.

2. An independent operator of recording equipment should be provided to assure the integrity of the recording and to relieve the attorneys from having technical and mechanical responsibilities which would be burdensome and undesirable in such potentially hotly contested litigation.

3. A non-stenographic recording should provide a recording at least as high in quality as that provided by a court reporter. See generally Marlboro Products Corp. v. North American Philips Corporation *supra*; Kallen v. Nexus Corp., *supra*.

Accordingly, it is hereby ordered that the plaintiff's motion for an alternative means of taking depositions is held in abeyance until the plaintiff complies with the directives of this Memorandum Opinion and Order.

On Motion to Strike Interrogatories

This cause comes on the defendants' motion to strike the plaintiff's In-terrogatories of Thomas Peebles and Robert Stanley.

This is a civil rights action to redress an alleged deprivation of the plaintiff's civil rights guaranteed by the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985, and 1986. Jurisdiction of this Court is based on 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1988. The plaintiff seeks damages in the sum of $250,000, punitive damages in the sum of $1,000,000, plus the cost of maintaining this action.

The defendants in support of their motion to strike the Interrogatories contend:

1. The 227 questions of the Interrogatories are excessive and oppressive.

2. Robert Stanley has not been served with Summons and is not at this time a party to this action.

3. The depositions of these individuals have been noticed for July 10, 1973 and such depositions should cover the information sought in these interrogatories.

It is the opinion of this Court that many of the interrogatories in question are irrelevant and are generally excessive in the detail requested. The information requested includes evaluation of the educational and experiential requirements for employment as a Chicago police officer; the insurance coverage of the City of Chicago and the Chicago Police Department; any federal or state lawsuits, decrees, and/or orders involving the putative defendants Stanley or Peebles; a detailed accounting of their annual income, ownership of real estate and investments, etc.

Although this Court is committed to the liberal use of interrogatories for legitimate purposes, the Court expects counsel to use some judgment in preparing interrogatories. The interrogatories served by plaintiff in this case are oppressive and many of them are irrelevant.

■■ This Court will not attempt to judicially rewrite all 227 interrogatories. Instead all interrogatories will be stricken without prejudice to the plaintiff so that the plaintiff can properly draft interrogatories if he deems it necessary. In drafting interrogatories, the plaintiff should seek to make them simple, concise, and concerning only matters which are relevant to the instant action and which are reasonably to be expected to be within the knowledge of the putative defendants. American National Bank and Trust Co. v. Aetna Ins. Co., 447 F. 2d 680 (7th Cir. 1971) (relevancy); Reynolds v. Southern Ry. Co., 45 F.R.D. 526 (N.D.Ga.1968) (information within knowledge of third party); Frost v. Williams, 46 F.R.D. 484 (D.Md.1969) (burdensome); Struthers Scientific & Intern. Corp. v. General Foods Corp., 45 F.R.D. 375 (S.D.Tex.1968) (form of the interrogatories); Jones v. Goldstein, 41 F.R.D. 271 (D.Md.1966) (overbroad interrogatories).

Accordingly, it is hereby ordered that the plaintiff's interrogatories of Peebles and Stanley are stricken.